UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED ASSOCIATION LOCAL UNION NO. 26,<br><br>                    Plaintiff,<br><br>        v.<br><br>BIG ROOTER/NELSON PLUMBING AND MECHANICAL, INC.,<br><br>                    Defendant. | CASE NO. C10-1425 MJP<br><br>ORDER ON MOTION TO COMPEL ARBITRATION |

This matter comes before the Court on Plaintiff's motion to compel arbitration. (Dkt. No. 10.) Having reviewed the motion, the response (Dkt. No. 13), the reply (Dkt. No. 16), and all related papers, the Court GRANTS the motion.

**Background**

Plaintiff United Association Union No. 26 ("the Union") filed this action against Defendant Big Rooter/Nelson Plumbing and Mechanical, Inc. ("Big Rooter") to compel arbitration of a dispute between the parties. The dispute arose out of an action commenced by the Union Trust Funds ("Trust Funds") in King County Superior Court on May 26, 2010. The

ORDER ON MOTION TO COMPEL
ARBITRATION- 1

1  Trust Funds sought payments that Big Rooter purportedly did not make to the Trust Funds for

2  two employees of Big Rooter.  Big Rooter filed a third-party complaint against the Union,

3  arguing that it did not owe any amounts to the Trust Funds because it had essentially been duped

4  into signing a collective bargaining agreement with the Union.  Big Rooter asserts claims of

5  breach of contract, fraud in the execution, indemnity, and misrepresentation.  (Black Decl. Ex.

6  C.)  The Union then commenced this action to compel arbitration of Big Rooter's complaint.

7        Big Rooter is a small plumbing company in Monroe, Washington that employs three to

8  four individuals.  (Nelson Decl. ¶ 1.)  In February 2007, Big Rooter needed additional employees

9  and desired to use a union plumber.  (Id. ¶ 2.)  Big Rooter's president, Mathew Nelson met with

10 a representative from the Union and discussed joining the Union.  (Id. ¶ 3.)  Two of the Big

11 Rooter employees did not want to join the Union, and Nelson was assured they could continue to

12 work for Big Rooter without joining the Union.  (Id.)  Nelson maintains that he "would not have

13 considered joining the union or signing any agreements if the representative had told us that [his

14 two employees] would either have to join the Union or leave Big Rooter."  (Id.)  At the time of

15 the meeting, he did not receive a copy of the Labor/Management Agreement.  (Id.)

16       One week after the initial meeting, Nelson travelled to Burlington, Washington to sign

17 the Labor/Management Agreement (also referred to as the "Collective Bargaining Agreement" or

18 "CBA").  (Nelson Decl. ¶ 4.)  Nelson states that he signed the 51 page agreement, but that he did

19 not receive the Trust Agreement. (Id. ¶ 5.)  Nelson also claims he did not know there was an

20 arbitration clause in the Labor/Management Agreement (Id. ¶ 6.)  Nelson also states that he did

21 not have "a reasonable opportunity to review the contents of the Agreement" and that he was

22 "not provided with a complete copy of all of the documents reference in the Labor/Management

23 Agreement."  (Id. ¶ 8.)  He further states that the Union representative classified some of his

24

ORDER ON MOTION TO COMPEL
ARBITRATION- 2

1 employees who didn't want to join the Union as "appliance installers," which purportedly

2 exempts them from the Labor/Management Agreement. (Id. ¶ 7.) Nelson also contends that the

3 Union failed to provide Big Rooter with sufficient personnel to satisfy its needs. (Id. ¶ 9.)

4     The Trust Funds however found that Big Rooter did not contribute proper amounts for

5 two of its employees. (Nelson Decl. ¶¶ 11-12.) The Trust Funds thus commenced litigation

6 against Big Rooter. The Union now seeks a summary judgment order granting its request to

7 compel arbitration. The Union argues that the arbitration clause of the Labor/Management

8 Agreement Big Rooter signed requires arbitration of the third-party complaint Big Rooter filed.

9     The arbitration clause contains several provisions. First, it states that "in the event of any

10 disputes between parties to this agreement as to the rights and/or obligations under this

11 agreement, a representative of the Union and a representative of the Employer shall be

12 immediately notified . . . [and] [e]very effort possible shall be made by the Local Union and the

13 Employer to settle the dispute. . . ." (Black Decl. Ex. A at 6.) "All grievances brought by the

14 Employer or the union shall be submitted to the other party to this agreement within seven (7)

15 working days of occurrence." (Id.) Second, if no agreement is made, the dispute "shall be

16 referred to the Joint Grievance Committee." (Id.) The Committee is composed of three

17 representatives from the Union and three signatory contractor representatives selected by the

18 Mechanical Contractors Association of Western Washington ("MCA"). (Id.) All members of

19 the Committee must be agreed upon by all parties. (Id.) Third, if the Committee does not

20 resolve the dispute to the parties' satisfaction within five days of it being submitted to the

21 Committee, either the Union or Employer can elect to submit the grievance to arbitration by

22 notifying the other party in writing. (Id.) The arbitrator's decision is binding on the parties and

23 the sides are to pay their own fees and expenses. (Id.)

24

ORDER ON MOTION TO COMPEL
ARBITRATION- 3

**Analysis**

A. <u>Breach of Contract Claim and Indemnity Claims Must be Arbitrated</u>

The Union argues that the arbitration clause in the Labor/Management Agreement requires arbitration of Big Rooter's breach of contract claim and request for indemnity. The Union is correct.

"[W]hether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" <u>Granite Rock Co. v. Int'l Broth. of Teamsters</u>, ___ U.S. ___, 130 S. Ct. 2847, 2855 (2010) (quoting <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002) (quotation omitted)). The Federal Arbitration Act "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." <u>Rent-A-Center, West, Inc. v. Jackson</u>, 130 S.Ct. 2772, 2776 (2010) (citation omitted). A "presumption of arbitrability applies even to disputes about the enforceability of the entire contract containing the arbitration clause, because at least in cases governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 1 <u>et</u> <u>seq.</u>, courts must treat the arbitration clause as severable from the contract in which it appears, and thus apply the clause to all disputes within its scope [u]nless the [validity] challenge is to the arbitration clause itself or the party disputes the formation of [the] contract." <u>Granite Rock</u>, 130 S. Ct. at 2857 (2010) (emphasis in original) (quotation omitted).

The arbitration clause covers Big Rooter's breach of contract claim and request for indemnity. The arbitration clause itself states that it covers "any disputes between parties to this agreement as to the rights and/or obligations under this agreement." (Black Decl. Ex. A at 6.) The purpose of the Labor/Management Agreement expressly references the goal of Big Rooter having sufficient employees as a result of the agreement. (Black Decl. Ex. A at 1.) Indeed, the

ORDER ON MOTION TO COMPEL
ARBITRATION- 4

main reason Big Rooter signed the agreement was to obtain employees through the Union.  Big Rooter's breach of contract claim is that the Union failed to abide by the terms of the Agreement and provide adequate labor.  This dispute is subject to arbitration.  Similarly, Big Rooter's request for indemnity is one that directly arises out of the collective bargaining agreement.  These claims must be arbitrated and the Court GRANTS the Union's motion on these claims.

B.     Fraud and Misrepresentation Claims are Subject to Arbitration

Whether Big Rooter's fraud claim is subject to arbitration depends first on whether it is a claim for fraudulent execution or fraudulent inducement.  The Union is correct that the claim is one for fraudulent inducement.  The Union is also correct that the fraudulent inducement claim is subject to the arbitration provision of the collective bargaining agreement.

1.     Fraudulent Inducement

The distinction between fraudulent inducement and fraudulent execution is one of formation.  Fraud in the execution "has been defined as fraud that goes to the nature of the instrument itself."  Pedersen v. Bibioff, 64 Wn. App. 710, 722 (1992).  The Restatement of Contracts explains that fraud in the execution requires a misrepresentation as to the character or essential terms of the contract that induces another to assent to the contract without understanding the character or essential terms of the deal.  Restatement (Second) of Contracts § 163 (1979).  For example, the court in Pedersen found fraud in the execution where one party had been duped into signing quitclaim deed when he thought he was signing a will with entirely different terms.  Pedersen, 64 Wn. App. at 723-24.  "Fraud in the inducement, on the other hand, is fraud which induces the transaction by misrepresentation of motivating factors such as value, usefulness, age or other characteristic of the property or item in question."  Id. at 722.

Big Rooter's claim of fraud is for fraudulent inducement, not fraud in the execution. Big Rooter knew that it was signing a collective bargaining agreement when it sought to hire one union employee. (Nelson Decl. ¶¶ 3-4.) It claims that it was induced to sign the agreement because it was assured two of its employees who would did not want to join the Union did not have to join the Union. Big Rooter's fraud and misrepresentation claims are premised on the notion that it did not understand what the full ramifications of the deal were. Unlike in Pedersen there is no claim that Big Rooter misunderstood it was signing a collective bargaining agreement. The Union points to a similar case where a district court found a claim for fraud to be one of inducement, not fraud in the execution, where the employer claimed it was mislead as to which projects a collective bargaining agreement would apply, but did not dispute that it knowingly signed a collective bargaining agreement. New Jersey Bldg. Laborers v. Perfect Concrete Cutting, No. 2:10-1540, 2010 WL 2292102, at *2 (D.N.J. June 2, 2010). As was the case in Perfect Concrete, the employer (Big Rooter) is only claiming that it was misled as to the scope of the agreement. This is a claim for fraudulent inducement, not fraud in the execution.

  2.  Arbitration of Fraudulent Inducement and Misrepresentation Claims

A claim of fraudulent inducement as to the contract in general will not avoid the arbitration clause of the contract. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). This is not the case where the "fraud [is] in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate. . . ." Id. at 403-04; accord Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.") A court "should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a

1 valid provision specifically committing such disputes to an arbitrator) its enforceability or

2 applicability to the dispute is in issue." Granite Rock, 130 S.Ct. at 2857-58.

3       Big Rooter's fraudulent inducement and misrepresentation claims are subject to the

4 arbitration provision in the collective bargaining agreement.  Neither claim goes to the arbitration

5 clause itself.  See Prima Paint, 388 U.S. at 404.  The claims involve Big Rooter's attack to the

6 scope of the agreement, not the formation itself.  An arbitrator should resolve this dispute.  The

7 Court GRANTS the motion to compel arbitration of Big Rooter's fraud and misrepresentation

8 claims.

9 C.      Not Unconscionable

10       Big Rooter argues that the grievance procedure in the Labor/Management Agreement is

11 substantively and procedurally unconscionable.

12       In order to determine whether provisions in a collective bargaining agreement are

13 unconscionable, the Court is to look at federal law where, as here, the claim is brought under §

14 301 of the Labor Management Relations Act of 1947.  Textile Workers Union of Am. v. Lincoln

15 Mills, 353 U.S. 448, 456 (1957).  The Court may look to state law only where "it effectuates the

16 policy that underlies federal labor legislation."  Waggoner v. Dallaire, 649 F.2d 1362, 1365 (9th

17 Cir. 1981) (quotation omitted).  "The main principle underlying federal labor legislation is that

18 collective bargaining is the best means of securing and maintaining industrial peace."  Id. at

19 1367.

20       In Washington, substantive unconscionability involves terms of a contract that are "one-

21 sided or overly harsh," "shocking to the conscience," "monstrously harsh," or "exceedingly

22 calloused."  Zuver v. Airtouch Commnc'ns, Inc., 153 Wn.2d 293, 303 (2004).  Procedural

23 unconscionability involves a "lack of meaningful choice, considering all the circumstances

24

1  surrounding the transaction, including '[t]he manner in which the contract was entered,' whether
2  each party had a 'reasonable opportunity to understand the terms of the contract,' and whether
3  'the important terms [were] hidden in a maze of fine print.'" Nelson v. McGoldrick, 127 Wn.2d
4  124, 131 (1995) (quoting Schroeder v. Fageol Motors, Inc., 86 Wn.2d 256, 260 (1975)).

5       Big Rooter's argument that the seven-day limit on filing grievances is unconscionable
6  finds no support.  Plaintiff argues that Washington applies a six year statute of limitations
7  exposes the unconscionable nature of the limitation.  However, there is nothing shocking or
8  monstrously harsh about this procedure.  The Union has submitted several declarations
9  explaining that 4-10 days is common for grievance procedures.  This serves the interest in
10 "securing and maintaining industrial peace" through prompt resolution of disputes.  Waggoner,
11 649 F.2d at 1365.  The Court rejects Big Rooter's argument that the time limit is unconscionable.

12      Big Rooter also argues that the grievance substantively unconscionable because several
13 terms are not defined and there is no specific explanation how to file a grievance.  A cursory
14 review of the procedure shows it is not particularly complex.  It is true that the agreement
15 requires notification of MCA by fax and that there is no fax number listed.  However, the fax
16 number is readily available on the MCA website and nowhere has Big Rooter claimed not to
17 know what MCA is—the entity that negotiated the Labor/Management agreement.  There is
18 nothing unduly harsh or shocking to the conscience about these provisions.  The Court rejects
19 this argument.

20      Big Rooter also argues that the agreement is substantively unconscionable because it
21 permits the Trust Funds to bring suit in Superior Court while requiring Big Rooter to arbitrate.
22 As the Union points out, this argument fails to distinguish between the Union and the Trust
23
24

Funds. The Trust Funds are not parties to the collective bargaining agreement. They are therefore not bound by the agreement, as Big Rooter is. Big Rooter's argument is misguided.

Big Rooter also argues the agreement is procedurally unconscionable because it had no reasonable opportunity to review the contract. This argument is another permutation of Big Rooter's misrepresentation and fraudulent inducement claim that must be arbitrated. Without passing judgment on those the claims, the Court notes that Big Rooter has not shown that it lacked meaningful choice when it contracted with the Union. In a self-serving declaration, Big Rooter has stated that it lacked a meaningful choice, but the facts do not support this contention. Rather, the facts show that Big Rooter approached the Union voluntarily, had a meeting with the Union representative, and could have read the entire contract had it chosen to do so before signing it. Big Rooter could also have sought employees who were not members of the Union, but it chose not to. Big Rooter has failed to show procedural unconscionability.

D.  Attorney's Fees

The Union requests attorneys' fees for bringing the motion. The Court does not believe that fees are proper or necessary in this matter. The third-party claims that Big Rooter pursued in state court have merit and do not appear to have been made with an attempt to frustrate the arbitration provision. The Court DENIES the request for fees.

E.  Relief

The Union asks the Court to order Big Rooter to dismiss its complaint, or, in the alternative, to stay the state court proceedings so that the parties can arbitrate Big Rooter's complaint. The Union provides no authority for requiring Big Rooter to dismiss its suit. The Court will not grant this relief. The Union does provide some authority for the proposition that the Court may issue a stay of the state court action filed by Big Rooter. However, as the Union

recognizes, the Federal Arbitration Act does not expressly authorize the Court to stay the state court litigation. (Dkt. No. 19 at 21.) The Court does not find it necessary or proper in the case to issue an order staying Big Rooter's third-party complaint. The Court presumes that the Superior Court will be asked to consider its own case in light of this Court's order, and it will be up to the Superior Court Judge to make his or her own decision as to what is appropriate.

## Conclusion

The Court GRANTS Plaintiff's motion to compel arbitration. The claims that Big Rooter wishes to pursue are subject to the arbitration clause of the Labor/Management Agreement. There are no valid grounds to permit an exemption to that provision. The Court does not award any fees in this matter, and it will not stay the state court proceedings or force Big Rooter to dismiss its third-party complaint.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 14th day of January, 2011.

Marsha J. Pechman
United States District Judge